UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TONYA MARIE WHITE,

        Plaintiff,

vs.                               Case No.  3:12-cv-367-J-MCR

CAROLYN W. COLVIN,[1]
Acting Commissioner of the
Social Security Administration,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[2]

This cause is before the Court on Plaintiff's appeal of an administrative decision

denying her application for Social Security benefits.  The Court has reviewed the record,

the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's

decision is **REVERSED AND REMANDED**.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits ("DIB") and

Supplemental Security Income ("SSI") on January 27, 2006, alleging the onset of

disability on January 28, 2005.  (Tr. 225, 230).  The applications were denied (Tr. 125,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 16).

129, 133) and Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on October 14, 2009.  (Tr. 36).  On November 3, 2009, the ALJ issued his decision, finding Plaintiff was not disabled.  (Tr. 79-88).  Plaintiff then requested review of the hearing decision by the Appeals Council.  (Tr. 336-337).  On January 24, 2011, the Appeals Council remanded the case for additional development of the record and a new decision.  (Tr. 92).

While the case was pending before the Appeals Council, Plaintiff filed additional applications for DIB and SSI on December 17, 2009.  (Tr. 244, 251).  Again, these applications were denied.  (Tr. 167, 171, 178, 181).

On remand, the ALJ held an additional hearing on May 4, 2011.  (Tr. 7).  In a hearing decision dated June 1, 2011, the ALJ found that Plaintiff was capable of performing work available in significant numbers in the national economy and was therefore, not disabled.  (Tr. 100-110).  Plaintiff again sought Appeals Council review and the Appeals Council denied her request.  (Tr. 1-3).  Therefore, the ALJ's June 1, 2011 decision is the final decision of the Commissioner of Social Security.  Plaintiff timely filed her complaint in this Court on April 4, 2012.  (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claimed to be disabled since January 1, 2007, due to diabetes mellitus, essential hypertension, osteoarthritis, gastro-intestinal reflux disease, depression, and anxiety.  (Tr. 19, 103).

B.   <u>Summary of Evidence Before the ALJ</u>

Plaintiff was forty-four years old on the date of her hearing before the ALJ on May 4, 2011.  (Tr. 16).  Plaintiff had past relevant work as a food service supervisor, school cafeteria cook, and nursery school attendant.  (Tr. 31).  Plaintiff has a ninth grade education and does not have her GED.  (Tr. 17).

Plaintiff applied for DIB and SSI in January 2005 and December 2009.  (Tr. 225, 244).  Plaintiff testified she was injured her lower back in a car accident in 2005.  (Tr. 20).  Plaintiff also testified she injured her arm when she fell in July 2009.  <u>Id.</u>  Plaintiff's complaints include leg and feet pain, diabetic neuropathy, fibromyalgia, diabetes, high blood pressure, vertigo, anxiety, asthma, and venous insufficiency.  (Tr. 20-21).

Plaintiff initially saw Dr. John Anthony Gianoli, M.D. (Dr. Gianoli) on February 1, 2005, a few days after an automobile accident that occurred on January 28, 2005.  (Tr. 460).  Plaintiff complained of "neck pain, low back pain, intermittent headaches, paresthesias in her left arm, and weakness in her left arm."  <u>Id.</u>  Dr. Gianoli diagnosed her with "post-traumatic cervical, thoracic, and lumbar pain, sprain, and strain."  (Tr. 461).  Plaintiff continued to see Dr. Gianoli until her last exam with him on January 28, 2005.  (Tr. 445).  Dr. Gianoli stated Plaintiff "[could] expect to have continued aches and pains in and about her neck, upper back, mid back, and low back."  (Tr. 446).  He believed Plaintiff would need treatments in the form of chronic pain management and potentially acupuncture.  <u>Id.</u>  He advised Plaintiff to avoid stressful activities that could exacerbate her condition.  (Tr. 447).  He also stated Plaintiff sustained a permanent injury and could "look forward to decades of spending money on anti-inflammatory and muscle relaxant drugs as well as healthcare professionals, decades of loss wages, and

3

decades of pain and suffering."  Id.

In addition to Dr. Gianoli, Plaintiff saw a series of doctors since January 28, 2005.

(Tr. 444-1170).  She was diagnosed with chronic gastritis, helicobacter pylori infection,

possible myocardial injury, ischemia and/or unstable angina, probable axonal type of

peripheral nueropathy affecting legs, hypertension, diabetes, chronic neck and back

pain, gastroesophageal reflux disease, hyperlipidemia, and major depression.  (Tr. 541,

545, 571-572, 604).  On April 29, 2009, Dr. G. Quadir Khan, M.D., an obstetrician-

gynecologist, performed a vaginal hysterectomy along with repair of the proximal rectum

and a Hartman procedure.  (Tr. 12, 842).  Plaintiff suffered complications as a result of

this surgery.  (Tr. 13, 835).  Dr. Faramarz Behzadi, M.D., performed supplemental

surgery by way of colostomy take-down to fix the problem.  However, Plaintiff continued

to suffer from infections and adhesions.  (Tr. 13-14, 841-843).

Plaintiff was admitted to Atkinson's Home Health Care from May 9, 2009 through

August 27, 2009.  (Tr. 868-943).  On July 29, 2009, Plaintiff had an episode of syncope

where she fell in the shower at Memorial Hospital.  (Tr. 425).  Plaintiff testified she fell

three times.  (Tr. 60).  Plaintiff now suffers from severe abdominal pains that affect her

ability to sit, stand, or walk.  (Tr. 14).  Her treating physician affirmed that Plaintiff's

abdominal symptoms were associated with post surgical adhesions that made it painful

to sit, stand, or lie down.  (Tr. 1220).

Plaintiff began seeing her treating physician, Dr. Aixa Skelton, M.D., on October

1, 2007.  (Tr. 684).  Dr. Skelton suggested a less than sedentary functional capacity for

Plaintiff, that Plaintiff would need to lie down at unpredictable intervals, and that Plaintiff

would be excessively absent from employment.  (Tr. 1214-1215).  Dr. Skelton opined

Plaintiff's neuropathy of the lower extremities was mainly caused by diabetes.  (Tr. 1207).  He also suggested that her chronic depression medication was only "partially effective in controlling her symptoms."  (Tr. 1221).  Dr. Skelton's records depicted Plaintiff's problems as persistent abdominal-pelvic pain, alternating diarrhea and constipation, back pain, lower extremity tingling and pain, allergic rhinitis, insomnia, depression, morbid obesity, and glaucoma.  (Tr.  688-1207).

A state agency physician, Audrey Goodpasture, M.D., determined Plaintiff could perform light work.  (Tr. 1203).  Dr. Goodpasture noted there was no evidence of seizure disorder, enlarged heart, or nerve problems.  Id.  Dr. Goodpasture concluded Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently.  (Tr. 1199).  Plaintiff was able to stand and/or walk (with normal breaks) for a total of about six hours in and eight hour workday.  Id.  Plaintiff could also sit (with normal breaks) for a total of six hours in an eight hour workday.  Id.  Dr. Goodpasture noted Plaintiff had recovered from complications from hysterectomy and colostomy and observed that Plaintiff could:  walk two blocks despite getting short of breath, shop, complete household chores, do laundry, cook, and see at a distance without difficulty.  (Tr. 1200).

With respect to Plaintiff's mental health, Dr. Skelton prescribed medication for anxiety and depression.  (Tr. 704, 705, 709).  Plaintiff testified she had an anxiety disorder.  (Tr. 22).  Plaintiff testified the disorder caused mood swings, problems with crowds, and caused her to lose interest in things she used to do.  (Tr. 23).  On May 7, 2008, Peter Knox, a clinical psychologist, performed a consultative examination on Plaintiff and found Plaintiff had no significant impairment with work related mental activities.  (Tr. 604).  On June 24, 2008, William V. Choisser, M.D., an independent

medical examiner, performed a consultative physical examination of Plaintiff and noted Plaintiff had uncontrolled hypertension, poorly controlled diabetes, nueropathy, and chronic back and shoulder pain. (Tr. 622-623). Dr. Choisser did not note any extreme limitations after Plaintiff's HEENT examination. Id. On March 15, 2010, Jessica Anderton, a clinical psychologist, performed a second consultative psychological examination on Plaintiff. (Tr. 1107). Dr. Anderton found Plaintiff's memory was generally intact and that her attention and concentration were mildly impaired. (Tr. 1110). She diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder. (Tr. 1111).

### C.      Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the insured status requirements of the Social Security Act through March 31, 2010.  (Tr. 102).  At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 18, 2007.  Id.  At step two, the ALJ found Plaintiff's severe combination of impairments included diabetes mellitus, essential hypertension, osteoarthritis, gastrointestinal reflux disease (GERD), depression, and anxiety.  (Tr. 103).

At step three, the ALJ concluded Plaintiff's severe combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.  The ALJ then determined Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  (Tr. 104).  The ALJ concluded Plaintiff would be limited to simple, routine, repetitive tasks involving up to three step commands, which involve only occasional changes in the work setting and only the occasional need for judgment or decision-making.  Id.  Further, Plaintiff was "limited to jobs requiring only occasional interaction with the general public and/or co-workers."  Id.

In determining her RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably cause her alleged symptoms.  (Tr. 107).  However, the

ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible to the extent claimed by Plaintiff.  Id.

At step four, the ALJ determined Plaintiff was unable to perform any past relevant work.  Id.  At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and concluded there were numerous jobs existing in the national economy that Plaintiff could perform.  (Tr. 109).  Therefore, the ALJ concluded Plaintiff was not disabled.  Id.

## III.    ANALYSIS

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

###   B.   Issues on Appeal

Plaintiff argues two issues on appeal.  First, Plaintiff asserts the ALJ erred in

failing to consider all of the evidence from Plaintiff's treating physician, Dr. Skelton.

(Doc. 23, pp. 5-11).  Second, Plaintiff contends the ALJ did not adequately evaluate all

of Plaintiff's severe, medically determinable impairments.  (Doc. 23, pp. 11-14).  The

Commissioner responds the ALJ properly rejected Dr. Skelton's opinion of disability and

properly found Plaintiff had severe impairments.  (Doc. 25, pp. 12-17, 20-22).  The

Court will examine each of Plaintiff's claims.

### 1.   Whether the ALJ properly considered all of the evidence from Dr. Skelton

Plaintiff first argues the ALJ erred in failing to consider all of the evidence from

her treating physician, Dr. Skelton.  (Doc. 14, p. 16).  Plaintiff believes the ALJ erred in

failing to adopt limitations suggested by Dr. Skelton.  Specifically, Plaintiff argues the

ALJ should have adopted Dr. Skelton's opinion that Plaintiff needed to lie down at

unpredictable intervals and would be excessively absent from employment.

Plaintiff is correct that the opinion of a treating physician "'must be given

substantial or considerable weight unless 'good cause' is shown to the contrary.'"

Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2003) (quoting Lewis v. Callahan,

9

125 F.3d 1436, 1440 (11th Cir. 1997)).  "'Good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips, 357 F.3d at 1241 (quoting Lewis, 125 F.3d at 1440).  Additionally, the ALJ must clearly articulate his reasons for disregarding the opinion of a treating physician.  Id.

In the instant case, the ALJ provided four reasons for according no weight to Dr. Skelton's opinions.  The ALJ found Dr. Skelton's opinion evidence was inconsistent with Plaintiff's testimony at the hearing, it was inconsistent with his own treating records, it was inconsistent with other substantial medical evidence of record, and was not well supported by the record evidence as a whole.  (Tr. 108).  Instead, the ALJ gave significant weight to the reports of Dr. Knox, Dr. Choisser, Dr. Anderton, and the state agency medical and psychological consultants' RFC and PRTF assessments because they "were well supported by the record, as it existed at the time they were completed." (Tr. 108).

In this case, while the ALJ stated that Dr. Skelton's opinion was inconsistent with other evidence in the record, the Court does not agree.  As Plaintiff points out, Dr. Skelton's opinion is consistent with Dr. Anderton's with respect to Plaintiff's excessive absenteeism.  In her report, Dr. Anderton stated "[Plaintiff's] ability to maintain a regular schedule appears to be **significantly impaired** by a combination of psychiatric and physical problems at this point."  (Tr. 1111) (emphasis added).  This statement supports Dr. Skelton's opinion that Plaintiff would be excessively absent from work.

The ALJ is required to consider all of the evidence in the claimant's record when

10

making a disability determination.  <u>See</u> 20 C.F.R. §§ 404.1520(a), 416.920(a).  In addition, the ALJ must state the weight afforded to the evidence considered.  <u>Ryan v. Heckler</u>, 762 F.2d 939, 941 (11th Cir. 1985).  Specifically, the judge "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence."  <u>Lucas v. Sullivan</u>, 918 F.2d 1567, 1574 (11th Cir. 1990).  Indeed, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (quoting <u>Stawls v. Califano</u>, 596 F.2d 1209, 1213 (4th Cir. 1979)).  Although the ALJ is required to consider all of the evidence, he is not required to discuss all of the evidence presented, but rather must explain why "significant probative evidence has been rejected."  <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Here, the ALJ failed to explain why probative evidence that supported Dr. Skelton's opinion was not considered.  Dr. Anderton's opinion that Plaintiff's ability to maintain a regular schedule was "significantly impaired" is certainly probative evidence.  As such, the ALJ was required to discuss this evidence and to explain why he chose to discount it.  Although he stated that he gave significant weight to Dr. Anderton's opinions because she was "an examining psychologist and because [the opinions were] well supported by the record as a whole," (Tr. 108), the ALJ failed to even mention Dr. Anderton's belief that Plaintiff's ability to work a regular schedule was significantly impaired.  This limitation would obviously impact Plaintiff's ability to work and is

consistent with Dr. Skelton's opinion that Plaintiff would be excessively absent from work. The ALJ's failure to discuss this opinion is error and warrants remand. Accordingly, the Court will remand this matter for the ALJ to reconsider Dr. Anderton's and Dr. Skelton's opinions.

## 2. Whether Commissioner Substantially Evaluated All of the Severe Impairments

Plaintiff also contends the ALJ erred by failing to find her obesity, glaucoma, neuropathy, musculoskeletal pain, asthma, and vertigo constituted severe impairments at step two of his evaluation. (Doc. 25, pp. 11-15). The Commissioner responds that the ALJ did not err at step two because he found Plaintiff did suffer from severe impairments and that "is enough to satisfy the requirement of step two." (Doc. 25, p.20).

At step two, the claimant bears the burden of proving the existence of a severe impairment. See Yuckert, 482 U.S. at 146. The "'severity' of an ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1988); see also 20 C.F.R. § 416.920(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment . . ."); and Social Security Ruling ("SSR") 96-3p (in considering an alleged impairment, the ALJ must evaluate evidence about its "functionally limiting effects" to determine how it affects the claimant's ability to do basic work activities). However, at step two, the ALJ is not required to identify all of the impairments that should be considered severe. See Heatly v. Commissioner of Social

Sec., 382 F.App'x 823 (11th Cir. 2010).  Instead, the only requirement of step two is to identify if a severe impairment does in fact exist.  Id.

The Court finds no error in the step two finding in the instant case.  The ALJ found not only one, but six severe impairments suffered by Plaintiff.  While it is true the ALJ did not include Plaintiff's obesity, glaucoma, neuropathy, musculoskeletal pain, asthma, or vertigo to be severe impairments, Plaintiff has failed to point to any limitations on her ability to work arising from these impairments and not included in the RFC established by the ALJ.  As noted above, it is Plaintiff's burden to prove the existence of a severe impairment and she must do that by showing an impact on her ability to work.  Plaintiff has failed to do that with respect to her obesity, glaucoma, neuropathy, musculoskeletal pain, asthma, or vertigo and therefore, there is no error in the ALJ's failure to find those impairments severe at step two.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. § 405(g).  On remand, the ALJ shall (1) reconsider and reassess the weight accorded to Dr. Skelton's and Dr. Anderton's opinions and state with particularity the weight assigned to them and the reasons therefor and (2) conduct any other proceedings deemed appropriate.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for

authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration.  **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

       **DONE AND ORDERED** at Jacksonville, Florida, this __5th__ day of March, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record